[645 NYS2d 368]

RICHARD DI PONZIO et al., Respondents, v MICHAEL RIORDAN, Defendant, UNITED REFINING COMPANY OF PENNSYLVANIA, Doing Business as KWIK FILL, et al., Appellants.

Fourth Department, July 12, 1996

**APPEARANCES OF COUNSEL**

*Volgenau & Bosse,* Buffalo *(Norman E. S. Greene* of counsel), for appellant.

*Norman A. Palmiere, P. C.,* Rochester, for respondents.

*Connors & Corcoran,* Rochester, for defendant.

**OPINION OF THE COURT**

WESLEY, J.

We are presented in this case with an issue of first impression for appellate courts in New York: is it foreseeable that an unattended parked car, with its motor running, would inexplicably move and strike a patron at a gas station? We hold that, as a matter of law, it is not foreseeable that such a chain of events would occur.

**I**

On April 15, 1991, at about 1:00 P.M., Richard Di Ponzio (plaintiff) arrived at a Kwik Fill gas station in the City of Rochester, owned by United Refining Company of Pennsylvania, doing business as Kwik Fill, and Rochester Gasoline Corp. (defendants). Plaintiff parked his car behind a Pontiac owned by Michael Riordan (Riordan), with the rear of his car facing Riordan's. The engine in Riordan's car was running. Signs are posted near the gas pumps directing patrons not to smoke and to stop their engines. Plaintiff exited his car and began to pump gas.

Riordan testified at his deposition that the transmission of his car was set in park. After pumping gas into his car, Riordan went inside the station to pay. As Riordan walked out the door of the station, he observed his car beginning to roll backwards. He ran to his car as quickly as he could, but was unable to get to it before it struck plaintiff, pinning plaintiff's legs between the two cars. Plaintiff had not been aware that the motor in Riordan's car was running, and did not notice that Riordan's car was moving until it struck him. The space between the two cars was level and flat. Riordan and two Kwik Fill employees present at the station estimated that Riordan's car had been at the gas station for five or six minutes before it began to move. Riordan does not know what caused the car to move.

The Kwik Fill station had become a self-service station in the month prior to the accident. A two-way intercom system had been installed at that time to allow the attendants to com-

municate with the customers. Randy Sawdey, assistant manager of the station, testified at his deposition that the intercom was turned off when the accident occurred. Robert Carter, the manager, testified, however, that the intercom was turned on, and that the volume was set between one and two—loud enough to hear engines running. Carter and Sawdey both testified that the attendants were supposed to remain at the counter and monitor the gas pumps from inside the station.

Because the intercom picked up a lot of noise, it was often turned off by Carter, in violation of Kwik Fill's rules. According to Carter, the purpose of Kwik Fill's requirement that customers shut off their motors is to protect both patrons and employees from the risk of explosion. Sawdey could not remember any prior accidents involving injuries to customers, even when the station was a full-service station.

Plaintiff and his wife commenced this action against defendants and Riordan alleging, *inter alia*, that the accident occurred as a result of the negligence of defendants in their ownership and operation of the gas station. After discovery, defendants moved for summary judgment dismissing the complaint and Riordan's cross claims. Defendants argued that: (1) there was no evidence that they violated a legal duty owed to plaintiff; (2) any alleged negligence was not a proximate cause of plaintiff's injuries; and (3) the accident and injuries were not foreseeable as a matter of law.

Supreme Court denied defendants' motion. The court also held that, as owners of the property, defendants had a duty to exercise reasonable care under the circumstances. The court also held that proximate cause and foreseeability present questions of fact in this case, relying upon our decision in *Ouimet v Humble Oil & Ref. Co.* (55 AD2d 855, *lv denied* 41 NY2d 802).

## II

"Unlike foreseeability and causation, which are issues generally and more suitably entrusted to fact finder adjudication, the definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make prior to submitting anything to fact-finding or jury consideration" (*Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 585). In general, landowners have a duty to act as reasonable persons in maintaining their property " 'in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk' " (*Basso v*

*Miller*, 40 NY2d 233, 241). Since *Basso*, landowners have been absolved of the heightened duties of care that they previously owed their business invitees and guests (*Adams v New York City Tr. Auth.*, 88 NY2d 116, 122).

Supreme Court properly held that defendants owed plaintiff a duty of reasonable care under the circumstances. The question whether defendants fulfilled their duty of reasonable care presents a question best left to the trier of fact (*see, Baker v Sportservice Corp.*, 142 AD2d 991, 992).

Defendants continue to argue on appeal that a gas station has no duty to control the movement of its patrons' automobiles, citing *Stone v Williams* (97 AD2d 509, *affd* 64 NY2d 639). However, as noted by the court, when the Court of Appeals affirmed the decision of the Second Department in *Stone v Williams* (64 NY2d, *supra,* at 641-642), the Court of Appeals did not specifically decide whether any such duty existed. Moreover, unlike *Stone v Williams*, this case does not involve a patron moving an automobile, but rather a patron who left an automobile unattended with its engine running. This is a situation over which gas station operators have considerably greater control.

Defendants argue that there is no general common-law duty to control the conduct of third persons, citing *Pulka v Edelman* (40 NY2d 781, *rearg denied* 41 NY2d 901). A landowner has a duty to take reasonable precautions to secure its premises if it knows or has reason to know from past experience " ' "that there is a likelihood of conduct on the part of third persons * * * which is likely to endanger the safety" ' " of users of the premises (*Dyer v Norstar Bank*, 186 AD2d 1083, *lv denied* 81 NY2d 703, quoting *Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 519). Thus, the question of defendants' liability turns on the foreseeability of the conduct of the third persons (*see generally, Kush v City of Buffalo*, 59 NY2d 26, 33; *Earsing v Nelson*, 212 AD2d 66, 70).

It was certainly foreseeable to defendants that a customer would leave his engine running, and that it would create the risk of explosion and fire. Defendants' employees testified that they tried to reduce the fire and explosion hazards by requiring customers to shut off their engines. Accordingly, we cannot say that defendants owed no duty to control the conduct of third persons in this instance.

Plaintiff argues that a duty is created by the City of Rochester Fire Prevention Code, which imposes a duty upon operators of self-service gasoline stations to control ignition sources. Al-

though that ordinance shapes the scope of the aforementioned duty to protect against risks of fire and explosion, the ordinance does not create any further liability on the part of defendants in this case. "Manifestly, a violation of [a] statute cannot 'establish liability if the statute is intended to protect against a particular hazard, and a hazard of a different kind is the occasion of the injury' " (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513, quoting *DeHaen v Rockwood Sprinkler Co.*, 258 NY 350, 353).

## III

Supreme Court did not err in holding that there is a question of fact whether defendants' alleged negligence was a proximate cause of plaintiff's injuries. Proximate cause is generally a question of fact (*see, Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315, *rearg denied* 52 NY2d 784; *Fizette v Kuhn* [appeal No. 1], 190 AD2d 1051). "[W]here only one conclusion may be drawn from the established facts * * * the question of legal cause may be decided as a matter of law" (*Derdiarian v Felix Contr. Corp., supra,* at 315), but that is not the case here.

Defendants argue that the negligence of Riordan in leaving his car running was the sole proximate cause of plaintiff's injuries. They rely upon several New York cases in which the failure of a driver to control his or her vehicle was held to be the cause of a plaintiff's injuries, and the landowner's premises merely furnished the condition or occasion for the occurrence (*see, Stone v Williams*, 64 NY2d, *supra,* at 641-642 [driver's accelerator stuck as driver was backing toward gas pump]; *Margolin v Friedman*, 43 NY2d 982, 983 [automobile driven by patron of car wash went out of control]; *Weber v City of New York*, 24 AD2d 618, *affd* 17 NY2d 790 [truck driver backed into plaintiff, who was walking on public sidewalk adjacent to gas pumps]; *Abazis v Parks*, 189 AD2d 739, *lv denied* 82 NY2d 652 [out-of-control vehicle jumped curb, mounted sidewalk, and struck plaintiff as he filled his car tires with air at service station]; *Grandy v Bavaro*, 134 AD2d 957, *lv denied* 71 NY2d 802 [driver lost control of vehicle and struck plaintiff on sidewalk between parking lot and convenience store]; *Marcroft v Carvel Corp.*, 120 AD2d 651, *lv denied* 68 NY2d 609 [out-of-control vehicle crashed through defendant's ice cream store and struck plaintiff customers inside]).

We agree with plaintiff and Supreme Court that proximate cause is an issue of fact in this case. The alleged negligence of defendants in this case was in permitting Riordan to leave his

engine running while at the gas pumps. By all accounts, Riordan's engine was left running for six minutes. Sawdey, Carter and defendants' area supervisor all testified that, if gas station attendants noticed a vehicle's engine running, they would require that the customer shut off the engine. The gas station attendants had far more control over whether a customer's vehicle is left running than they have over a customer's careless driving on the station premises.

## IV

Nevertheless, we agree with defendants that the accident was not foreseeable by them as a matter of law. "Whether a breach of duty has occurred, of course, depends upon whether the resulting injury was a reasonably foreseeable consequence of the defendants' conduct. 'If the defendant could not reasonably foresee any injury as the result of his act, or if his conduct was reasonable in the light of what he could anticipate, there is no negligence, and no liability' (Prosser, Torts [4th ed], § 43, p 250)" (*Danielenko v Kinney Rent A Car*, 57 NY2d 198, 204).

No reported case in New York has addressed the question whether it is foreseeable that a vehicle left unattended with its engine running at a self-service gas station will inexplicably move and injure a plaintiff. Courts in other States, however, have uniformly held that such an accident is not foreseeable as a matter of law.

In *Gonzalez v Kennedy Mobil Serv.* (274 Ill App 3d 1077, 654 NE2d 624), plaintiff's decedent was filling his car with gasoline when he was struck by another vehicle. The driver of the other vehicle (Injerra) had left it with the engine running at the air pump in front of the service station's garage. Although Injerra's vehicle had been left in park, it circled backwards a distance of between 137 and 245 feet and struck plaintiff's decedent. No accidents involving motor vehicles, let alone one even remotely similar to that accident, had occurred in the 20 years that Kennedy Mobil's president had been operating the premises. Moreover, signs at each gas pump warned motorists to stop their engines while outside of their cars. Relying upon *Anderson v Woodlawn Shell* (132 Ill App 3d 580, 478 NE2d 10), the court held that "the accident involving the decedent was a tragic, yet unforeseeable, event caused by the negligence of a third party over which Kennedy Mobil had no control" (*Gonzalez v Kennedy Mobil Serv.*, 274 Ill App 3d, *supra*, at 1087, 654 NE2d, *supra*, at 630).

A similar accident occurred in *Anderson*. A gas station customer left her vehicle in park, with the engine running and

the emergency brake not engaged, as she prepaid the cashier. Her vehicle moved toward plaintiff, who was pumping gasoline into her own vehicle, and plaintiff's legs were pinned between the two vehicles. The proprietor of the gas station testified that he had no knowledge of any prior accidents during the four years in which he had operated the self-serve station. The court noted that, "[i]n retrospect, plaintiff can assert that defendants should have foreseen that the unfortunate event in this case might conceivably occur; however, it is clear that such an occurrence was not 'objectively reasonable to expect' " (*Anderson v Woodlawn Shell*, 132 Ill App 3d, *supra*, at 582-583, 478 NE2d, *supra*, at 13, quoting *Winnett v Winnett*, 57 Ill 2d 7, 13, 310 NE2d 1, 5).

In *Spurlock v Schwegmann Bros. Giant Supermarket* (475 So 2d 20 [La App]), plaintiff's decedent was pinned against his automobile by another automobile left in neutral, with its engine running. The court held that "[t]here is no reason to believe that gas station owners should anticipate that automobiles will be negligently propelled forward, with or without a person in the car, into someone pumping gas at the rear of another car" (*Spurlock v Schwegmann Bros. Giant Supermarket,* 475 So 2d, *supra*, at 23). The court held that the incident was not foreseeable as a matter of law (*Spurlock v Schwegmann Bros. Giant Supermarket,* 475 So 2d, *supra*, at 24).

The holdings of those cases are consistent with the New York cases, cited earlier, in which the failure of a driver to control his or her vehicle was held to be the cause of a plaintiff's injuries (*cf., Franklin v Porter*, 190 AD2d 1036, 1037). They are also consistent with cases such as *Browarek v Pfalzer* ([appeal No. 1], 174 AD2d 1054), in which we held that the driver of a vehicle that got stuck in a muddy field was not liable to a passenger, because it was not foreseeable that the passenger would be injured when a truck driver stopped to help, and the truck rolled down a slope, striking the passenger.

*Ouimet v Humble Oil & Ref. Co.* (55 AD2d 855, *lv denied* 41 NY2d 802, *supra*), relied upon by plaintiff and Supreme Court, is distinguishable. In that case, we held that a gas station operator could be liable for injuries sustained by a patron who was struck by a child riding a bicycle through the gas station. In that case, however, there was evidence that the gas station operator knew that the child and other children had used the premises as a shortcut while riding their bicycles and had never told them not to do so, such that the injury to the customer could reasonably have been anticipated. By contrast,

here there is no evidence that any of the gas station personnel (even if they had known that Riordan's engine was running) could reasonably have foreseen that Riordan's vehicle would move backwards on its own, on level ground, for no apparent reason, especially after it had sat motionless for six minutes.

## V

Accordingly, the order of Supreme Court should be reversed and defendants' motion for summary judgment dismissing the complaint and cross claims against defendants should be granted.

DENMAN, P. J. (concurring). I concur in the result that the order must be reversed and that the complaint and cross claims against United Refining Company of Pennsylvania, doing business as Kwik Fill, and Rochester Gasoline Corp. (defendants) must be dismissed. I write separately to set forth my view that, as a matter of law, defendants, as the owner and operator of the gas station, owed no duty to Richard Di Ponzio (plaintiff) to prevent him from being struck by a vehicle left idling and unattended by another patron. I also write to set forth my view that, as a matter of law, defendants' alleged negligence was not the proximate cause of plaintiff's injury.

I agree that a landowner generally has a duty to " 'act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk' " (*Basso v Miller*, 40 NY2d 233, 241, quoting *Smith v Arbaugh's Rest.*, 469 F2d 97, 100, *cert denied* 412 US 939). Here, however, we are not called upon to determine the general duty of a landowner, but rather its duty to prevent a specific injury under specific circumstances. The issue of duty is typically a question of law (*Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 585). "[T]he definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make prior to submitting anything to fact-finding or jury consideration" (*Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 585, *supra; see, De Angelis v Lutheran Med. Ctr.*, 58 NY2d 1053, 1055).

"[D]uty is not something derived or discerned from an algebraic formula. Rather, it coalesces from vectored forces including logic, science, weighty competing socioeconomic policies and sometimes contractual assumptions of responsibility.

These sources contribute to pinpointing and apportioning of societal risks and to an allocation of burdens of loss and reparation on a fair, prudent basis * * *

"[W]hile the existence of a duty involves scrutiny of the wrongfulness of a defendant's action or inaction, it correspondingly necessitates an examination of an injured person's reasonable expectation of the care owed and the basis for the expectation and the legal imposition of a duty" (*Palka v Servicemaster Mgt. Servs. Corp., supra,* at 585).

"The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation" (*Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 344, *rearg denied* 249 NY 511). " '[W]henever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to the circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger' " (*Havas v Victory Paper Stock Co.,* 49 NY2d 381, 386).

I would hold that the relationship between a gas station owner and patron does not give rise to a duty on the part of the owner to protect the patron from being struck by an unattended vehicle of another patron (*cf., Pulka v Edelman,* 40 NY2d 781, 783-785, *rearg denied* 41 NY2d 901; *Grandy v Bavaro,* 134 AD2d 957, *lv denied* 71 NY2d 802; *Stone v Williams,* 97 AD2d 509, *affd* 64 NY2d 639). Defendants had no opportunity, and thus no obligation, to protect plaintiff against the unforeseeable risk that another patron's car would suffer a mechanical malfunction or inexplicably jump into gear. Defendants took all reasonable precautions when they posted the legally required warning to customers to shut off their engines. The fact that a patron ignored that warning is not the fault or responsibility of defendants. Moreover, it would be unreasonable to require defendants to monitor and enforce their customers' compliance with that warning. "[I]n no sense, can it be said that there was, in fact, a reasonable opportunity to stop drivers from disregarding these precautions * * * Accordingly, to say that a duty to use care arose from the relationship of the [gas station] to its patrons when there was no opportunity to fulfill that duty, places an unreasonable burden on the [gas station], indeed" (*Pulka v Edelman, supra,* at 784). "In the absence of duty, there is no breach and without a breach there is no liability" (*Pulka v Edelman, supra,* at 782; *see, Williams v State of New York,* 308 NY 548, 557).

Similarly, I would hold, as a matter of law, that any alleged negligence on the part of defendants in maintaining their premises was not a proximate cause of plaintiff's injury (*see, Stone v Williams*, 64 NY2d 639, 642, *supra; Margolin v Friedman*, 43 NY2d 982, 983; *Abazis v Parks*, 189 AD2d 739, *lv denied* 82 NY2d 652; *Grandy v Bavaro, supra,* at 958). The sole proximate cause was the malfunctioning of the vehicle. Plaintiff's claim is ostensibly premised on a theory of landowner liability, yet here "[t]he premises 'merely furnished the condition or occasion for the occurrence of the event rather than one of its causes'" (*Margolin v Friedman, supra,* at 983, quoting *Sheehan v City of New York*, 40 NY2d 496, 503).

BALIO, J., concurs with WESLEY, J.; DENMAN, P. J., concurs in result in a separate opinion; GREEN and BOEHM, JJ., dissent and vote to affirm for reasons stated in decision at Supreme Court, Fisher, J.

Order reversed, on the law, without costs, motion granted and complaint and cross claims against defendants United Refining Company of Pennsylvania, doing business as Kwik Fill, and Rochester Gasoline Corp. dismissed.